## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHRISTOPHER ANTHONY TAYLOR,   :     Civil No. 3:22-cv-1041

           Petitioner    :     (Judge Mariani)

     v.    :

GEORGE M. LITTLE, *et al.*,    :

           Respondents    :

## MEMORANDUM

Petitioner Christopher Anthony Taylor ("Taylor") filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging a judgment and conviction imposed in the Court of Common Pleas of York County, Pennsylvania. (Doc. 1). For the reasons set forth below, the Court will deny the habeas petition and a certificate of appealability will not issue.

## I.   Background[1]

On March 8, 2013, a jury convicted Taylor of statutory sexual assault, aggravated indecent assault (complainant is less than 16 years of age), indecent assault (complainant is less than 16 years of age), unlawful contact with a minor (sexual offenses), involuntary deviate sexual intercourse ("IDSI") (complainant is less than 16 years of age), and

---

[1]   The Court derived all pertinent facts and procedural history from the habeas petition itself and Respondents' exhibits, which include the Court of Common Pleas docket, the state court trial transcript, the state court sentencing and resentencing transcripts, the post-conviction hearing transcripts and opinion, and the Pennsylvania Superior Court opinions. (Docs. 20-1, 20-2, 20-3, 20-5, 20-6, 20-7, 20-8, 20-9, 20-11, 20-12, 20-13).

corruption of minors (defendant is 18 years of age or older). (Doc. 20-1, *Commonwealth v. Taylor*, No. CP-67-CR-0003093-2012 (Pa. Ct. Com. Pl. York Cnty.); Doc. 20-2, Trial Transcript). On June 17, 2013, the trial court imposed an aggregate sentence of 10 to 20 years' imprisonment. (Doc. 20-3, Original Sentencing Transcript). Taylor filed a timely direct appeal. (*See* Docs. 20-1, 20-4, 20-12).

On direct appeal, the Pennsylvania Superior Court determined that Taylor's claims were without merit but vacated his judgment of sentence and remanded for a new sentencing hearing due to the trial court's erroneous imposition of mandatory minimum sentences. (Doc. 20-5, *Commonwealth v. Taylor*, No. 1168 MDA 2014, 2015 WL 6949312 (Pa. Super. 2015)). Taylor filed a petition for allowance of appeal to the Pennsylvania Supreme Court, which was denied. *Commonwealth v. Taylor*, 134 A.3d 56 (Pa. 2016). On February 3, 2017, the trial court resentenced Taylor to an aggregate term of 8 to 16 years in prison. (Doc. 20-6, Resentencing Hearing Transcript).

On February 15, 2017, Taylor filed a *pro se* petition for post-conviction collateral relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 PA. CONS. STAT. §§ 9541-46. (*See* Docs. 20-1, 20-9). The PCRA court appointed counsel and conducted evidentiary hearings. (Docs. 20-7, 20-8, PCRA Hearing Transcripts). Following the evidentiary hearings, the PCRA court denied the petition. (Doc. 20-9, PCRA Court Opinion). Taylor filed a timely notice of appeal. (*See* Docs. 20-10, 20-13).

On November 22, 2021, the Pennsylvania Superior Court affirmed the PCRA court's order denying the PCRA petition. (Doc. 20-11, *Commonwealth v. Taylor*, No. 1576 MDA 2010, 2021 WL 5445854 (Pa. Super. 2021)). On June 2, 2022, the Pennsylvania Supreme Court denied Taylor's petition for allowance of appeal. *Commonwealth v. Taylor*, No. 669 MAL 2022, 279 A.3d 502 (Pa. 2022).

Thereafter, Taylor timely filed the instant petition pursuant to 28 U.S.C. § 2254. (Doc. 1).

## II.    Habeas Claims Presented for Federal Review

Taylor seeks habeas relief based on the following grounds:

- Ground One: Taylor was denied due process under the Fourteenth Amendment when the trial judge allowed Taylor's PCRA petition to proceed through the courts as originally filed, and without the amended petitions ordered from Taylor's PCRA attorneys.

- Ground Two: Taylor was denied effective assistance of counsel when PCRA counsel did not file an amended petition to properly preserve a layered ineffective assistance of counsel claim against Taylor's direct appeal counsel.

- Ground Three: Taylor was denied effective assistance of counsel when trial counsel did not present evidence that Taylor is circumcised after his accuser testified that he is uncircumcised.

- Ground Four: Taylor was denied effective assistance of counsel when trial counsel did not properly object to the Commonwealth submitting two unauthenticated paper printouts purported to be back-and-forth email conversations between Taylor and the victim.

- Ground Five: Taylor was denied due process when the Commonwealth submitted the printouts stated in his fourth claim into evidence.

- Ground Six: Taylor was denied effective assistance of counsel when trial counsel failed to subpoena his Dillsburg Fire and EMS employment records and subpoenaed the wrong Planet Fitness employment records.

- Ground Seven: Taylor was denied effective assistance of counsel where trial counsel failed to submit the victim's Facebook message to Taylor's mother which allegedly stated, "I don't know if the Court will listen to me when I tell them we didn't have sex."

- Ground Eight: Taylor was denied effective assistance of counsel when trial counsel failed to challenge Pennsylvania's Rape Shield Law.

- Ground Nine: Taylor was denied effective assistance of counsel when trial counsel failed to object to the prosecution's alleged misrepresentation of the Commonwealth's witness' testimony during its closing argument.

- Ground Ten: Taylor was denied due process when the Commonwealth committed a *Brady*[2] violation by withholding the victim's cell phone SIM card, and counsel was ineffective for failing to raise this issue.

(Docs. 1-1, 1-2).

## III.   Legal Standards

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  A habeas corpus petition pursuant to § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement.  *Preiser v. Rodriguez*, 411 U.S. 475, 498-99, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).  "[I]t is not the province of a federal habeas court to reexamine state-court

---

[2]  *Brady v. Maryland*, 373 U.S. 83 (1963) (holding that the due process rights of a defendant are violated when the prosecution withholds favorable, material evidence from the defense).

determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Estelle*, 502 U.S. at 68.

A.   Exhaustion and Procedural Default

A habeas petitioner must exhaust state court remedies before obtaining habeas relief. 28 U.S.C. § 2254(b)(1)(A). The traditional way to exhaust state court remedies in Pennsylvania was to fairly present a claim to the trial court, the Pennsylvania Superior Court, and the Pennsylvania Supreme Court. *See Evans v. Court of Common Pleas, Delaware County*, 959 F.2d 1227, 1230 (3d Cir. 1992). However, in light of Pennsylvania Supreme Court Order No. 218, issued May 9, 2000, ("Order No. 218"), it is no longer necessary for Pennsylvania inmates to seek allocatur from the Pennsylvania Supreme Court in order to exhaust state remedies under 28 U.S.C. § 2254(c). *See Lambert v. Blackwell*, 387 F.3d 210, 233-34 (3d Cir. 2004) ("We now hold that Order No. 218 renders review from the Pennsylvania Supreme Court 'unavailable' for purposes of exhausting state court remedies under § 2254(c).").[3] The habeas petitioner has the burden of proving exhaustion. *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997).

---

[3]   In May 2000, the Pennsylvania Supreme Court issued an order, Order No. 218, rendering review from the Pennsylvania Supreme Court "unavailable" for purposes of exhausting state court remedies for federal habeas petitions under 28 U.S.C. § 2254(c). *Lambert v. Blackwell*, 387 F.3d 210, 233 (3d Cir. 2004) (interpreting *In re: Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, No. 218 Judicial Administration Docket No. 1 (Pa. May 9, 2000) ("Order No. 218")). This means that, for purposes of federal habeas review under § 2254, a person in Pennsylvania custody "need not seek review

A petitioner's failure to exhaust his state remedies may be excused in limited circumstances on the ground that exhaustion would be futile. *Lambert*, 134 F.3d at 518-19. Where such futility arises from a procedural bar to relief in state court, the claim is subject to the rule of procedural default. *See Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). In addition, if the state court does not address the merits of a claim because the petitioner failed to comply with the state's procedural rules in presenting the claim, it is also procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

If a claim is found defaulted, the federal court may address it only if the petitioner establishes cause for the default and prejudice resulting therefrom, or that a failure to consider the claim will result in a fundamental miscarriage of justice. *Werts*, 228 F.3d at 192. To meet the "cause" requirement to excuse a procedural default, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* at 192-93 (quoting and citing *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986)). Additionally, a petitioner can rely on post-conviction counsel's ineffectiveness to establish cause to overcome the default of a substantial claim of ineffective assistance of trial counsel. *Martinez v. Ryan*, 566 U.S. 1, 14 (2012). To establish prejudice, a petitioner must prove "'not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage,

---

from the Pennsylvania Supreme Court" in order to have exhausted state remedies and seek federal habeas review. *Id.*

infecting his entire trial with error of constitutional dimensions.'" *Bey v. Sup't Greene SCI*, 856 F.3d 230, 242 (3d Cir. 2017).

For a petitioner to satisfy the fundamental miscarriage of justice exception to the rule of procedural default, the Supreme Court requires that the petitioner show that a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (quoting *Murray*, 477 U.S. at 496). This requires that the petitioner supplement his claim with "a colorable showing of factual innocence." *McCleskey v. Zant*, 499 U.S. 467, 495 (1991) (citing *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986)). In other words, a petitioner must present new, reliable evidence of factual innocence. *Schlup*, 513 U.S. at 324.

    B.    <u>Merits Standard</u>

Once a court has determined that the exhaustion requirement is met and, therefore, that review on the merits of the issues presented in a habeas petition is warranted, the scope of that review is set forth in 28 U.S.C. § 2254(d). Section 2254(d) provides, in pertinent part, that an application for a writ of habeas corpus premised on a claim previously adjudicated on the merits in state court shall not be granted unless:

> (1) [the decision] was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) [the decision] was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). To establish that the decision was contrary to federal law "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." *Matteo v. Superintendent*, 171 F.3d 877, 888 (3d Cir. 1999). Similarly, a federal court will only find a state court decision to be an unreasonable application of federal law if the decision, "evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Id.*

Further, under 28 U.S.C. § 2254(e)(1), a federal court is required to presume that a state court's findings of fact are correct. A petitioner may only rebut this presumption with clear and convincing evidence of the state court's error. *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions); *Matteo*, 171 F.3d at 888; *Thomas v. Varner*, 428 F.3d 492, 497-98 (3d Cir. 2005). This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000). Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." *Mastracchio v. Vose*, 274 F.3d 590, 597-98 (1st Cir. 2001).

Like the "unreasonable application" prong of paragraph (1), a factual determination should be adjudged "unreasonable" under paragraph (2) only if the court finds that a rational

jurist could not reach the same finding on the basis of the evidence in the record. 28 U.S.C. § 2254(d)(2); *Porter v. Horn*, 276 F. Supp. 2d 278, 296 (E.D. Pa. 2003); *see also Torres v. Prunty*, 223 F.3d 1103, 1107-08 (9th Cir. 2000); *cf. Jackson v. Virginia*, 443 U.S. 307, 316 (1979). "This provision essentially requires the district court to step into the shoes of an appellate tribunal, examining the record below to ascertain whether sufficient evidence existed to support the findings of fact material to the conviction." *Breighner v. Chesney*, 301 F. Supp. 2d 354, 364 (M.D. Pa. 2004) (citing 28 U.S.C. § 2254(d)(2) and (f)[4]).  Mere disagreement with an inferential leap or credibility judgment of the state court is insufficient to permit relief. *Porter*, 276 F. Supp. 2d at 296; *see also Williams v. Taylor*, 529 U.S. 362, 408-09 (2000); *Hurtado v. Tucker*, 245 F.3d 7, 16 (1st Cir. 2001).  Only when the finding lacks evidentiary support in the state court record or is plainly controverted by evidence therein should the federal habeas court overturn a state court's factual determination. *Porter*, 276 F. Supp. 2d at 296; *see also Williams*, 529 U.S. at 408-09.

C.    Ineffective Assistance of Counsel Standard

The Sixth Amendment right to counsel is the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984).  This right to effective assistance of counsel also extends to the first appeal. *Lewis v. Johnson*, 359 F.3d 646, 656

---

[4]    "If the applicant challenges the sufficiency of the evidence adduced in such State court proceeding to support the State court's determination of a factual issue made therein, the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to support such determination." 28 U.S.C. § 2254(f).

(3d Cir. 2004). In *Strickland*, the Supreme Court articulated a two-prong test in assessing

whether a petitioner has been denied the effective assistance of counsel. *Strickland*, 466

U.S. at 687-88. A petitioner must demonstrate: (1) that his counsel's representation "fell

below an objective standard of reasonableness" and (2) that such defective performance

caused the petitioner prejudice. *See id.*

In evaluating the first prong of the *Strickland* test, the court must be "highly

deferential" toward counsel's conduct. *Id.* at 689. There is a strong presumption that

counsel's conduct fell within the wide range of reasonable professional assistance. *Id.* ("It is

all too tempting for a defendant to second-guess counsel's assistance after conviction or

adverse sentence, and it is all too easy for a court, examining counsel's defense after it has

proved unsuccessful, to conclude that a particular act or omission of counsel was

unreasonable."). "*Strickland* and its progeny make clear that counsel's strategic choices will

not be second-guessed by post-hoc determinations that a different trial strategy would have

fared better." *Rolan v. Vaughn*, 445 F.3d 671, 681-82 (3d Cir. 2006) (citing *Strickland*, 466

U.S. at 689). Notably, courts will not deem counsel ineffective for failing to raise a meritless

argument. *Strickland*, 466 U.S. at 691; *United States v. Saunders*, 165 F.3d 248, 253 (3d

Cir. 1999).

To satisfy the prejudice prong, the petitioner must show that there is a reasonable

probability that, but for counsel's deficient performance, the outcome of the proceeding

would have been different. *See Strickland*, 466 U.S. at 694. "A reasonable probability is a

probability sufficient to undermine confidence in the outcome." *Id.* Moreover, the petitioner must show that he or she had a reasonable likelihood of prevailing on the motion at issue, and having prevailed on the motion, it was also reasonably likely that the result of the trial would have been different. *See Thomas*, 428 F.3d at 502.

To prevail on a claim for ineffective assistance of counsel, a petitioner must satisfy both prongs of the *Strickland* test. *Carpenter v. Vaughn*, 296 F.3d 138, 149 (3d Cir. 2002). The inquiry may begin with either the deficient performance or prejudice prong, and the court is not required to consider the second prong of the test if the petitioner is unable to satisfy the first one. *Strickland*, 466 U.S. at 697.

## IV.    Discussion[5]

It is first necessary to determine whether Taylor's claims presented in his habeas petition are cognizable in a federal habeas proceeding and whether they have been exhausted in the state courts and, if not, whether the circumstances of his case are sufficient to excuse his procedural default. The Court will then proceed to address the merits of the exhausted claims.

---

[5]    "In considering a § 2254 petition, we review the 'last reasoned decision' of the state courts on the petitioner's claims." *Simmons v. Beard*, 590 F.3d 223, 231-32 (3d Cir. 2009) (citing *Bond v. Beard*, 539 F.3d 256, 289-90 (3d Cir. 2008)). Thus, "[w]e review the appellate court decision, not the trial court decision, as long as the appellate court 'issued a judgment, with explanation, binding on the parties before it.'" *Burnside v. Wenerowicz*, 525 F. App'x 135, 138 (3d Cir. 2013). The Pennsylvania Superior Court's opinion, issued on November 22, 2021, will be the primary reference point in addressing Taylor's claims. *See Commonwealth v. Taylor*, 2021 WL 5445854 (Pa. Super. 2021).

A.    Non-Cognizable Claim—Ground Two

Taylor asserts that PCRA counsel was ineffective in failing to file an amended PCRA

petition.  (Doc. 1-2, at 3-4).  Taylor is not entitled to habeas relief on this claim to the extent

he asserts it as a standalone claim of ineffective assistance of PCRA counsel.  Taylor did

not have a federal constitutional right to counsel during his PCRA proceeding, *see*

*Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); therefore, he cannot receive habeas relief

on a standalone claim that his PCRA counsel was ineffective.  This concept is codified by

statute at 28 U.S.C. § 2254(i), which expressly provides that "[t]he ineffectiveness of

counsel during Federal or State collateral post-conviction proceedings shall not be ground

for relief in a proceeding arising under section 2254."  *See also Coleman*, 501 U.S. at 752-

53 ("There is no constitutional right to an attorney in state post-conviction proceedings….

Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in

such proceedings.").  Thus, Taylor's standalone ineffectiveness of PCRA counsel claim is

not cognizable as a basis for habeas relief.

B.    *Defaulted* Claims—Grounds One, Five, Eight, and Ten

Several of Taylor's claims are procedurally defaulted, although the bases for the

defaults fall into different procedural categories.  The Court will identify the claims that fit

into each category and then set forth the standards applicable to the defaulted claims.

### 1.    Not appealed to the Pennsylvania Superior Court (Ground Eight)

In ground eight, Taylor claims that trial counsel was ineffective for failing to challenge

Pennsylvania's Rape Shield Law.  (Doc. 1-2, at 14-15).  On November 22, 2021, the

Superior Court affirmed the denial of PCRA relief, finding that Taylor's failure to abide by

Rule 2119 of the Pennsylvania Rules of Appellate Procedure resulted in the waiver of this

appellate issue.  *Commonwealth v. Taylor*, 2021 WL 5445854, at *8 n.5.  The Pennsylvania

Superior Court reasoned as follows:

> Moreover, we note that, other than the bald assertions listed above, Taylor's
> appellate brief is devoid of any claims regarding trial counsel's alleged
> failure[] to file a motion to pierce the rape shield law… Therefore, any
> challenge regarding these claims has been waived and plays no role in our
> analysis of cumulative error.  *See* Pa.R.A.P. 2119(a); *Johnson, supra*.

*Commonwealth v. Taylor*, 2021 WL 5445854, at *8 n.5.

Taylor raised ground eight of his habeas petition in his PCRA appeal, and the

Superior Court disposed of the claim on state procedural grounds.  Specifically, the Superior

Court relied on Pennsylvania Rule of Appellate Procedure 2119(a).  The rule governs

appellate brief content, and reads as follows:

> Rule 2119. Argument
>
> (a) General Rule.  The argument shall be divided into as many parts as there
> are questions to be argued; and shall have at the head of each part--in
> distinctive type or in type distinctively displayed--the particular point treated
> therein, followed by such discussion and citation of authorities as are deemed
> pertinent.

PA. R. APP. P. 2119(a).

The Superior Court held that Taylor failed to comply with Rule 2119(a), noting that his "appellate brief is devoid of any claims regarding trial counsel's alleged failure[] to file a motion to pierce the rape shield law." *Commonwealth v. Taylor*, 2021 WL 5445854, at *8 n.5. The Superior Court was unambiguous in its application of Rule 2119(a), and at no point in the opinion does it reach the merits of ground eight regarding Pennsylvania's Rape Shield Law. *See id.* As a result, Taylor's failure to comply with Rule 2119(a) constitutes procedural default with respect to ground eight of the habeas petition.

Taylor can overcome procedural default with a showing of "cause and prejudice" or by showing a "fundamental miscarriage of justice." *Werts*, 228 F.3d at 192 (quoting *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir.2000) (quoting *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir.1999)); *see also Coleman*, 501 U.S. at 750 (applying "cause and prejudice" standard to district court review of habeas petitions). To show "cause," a petitioner must establish that "some objective factor external to the defense impeded counsel's [or petitioner's] efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488. "Prejudice" requires that the "habeas petitioner…show 'not merely that the errors at…trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Id.* at 494 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)) (emphasis in original). Taylor has failed to present any sufficient argument to excuse his default of this claim. (*See* Doc.

1-2, at 14-15; Doc. 24, at 30-35).  Accordingly, the Court finds that Taylor's procedural

default of ground eight should not be excused, and the claim is barred from federal review.

### 2.    Never Presented to State Court (Grounds One and Five)

In ground one, Taylor asserts that he was denied due process when the trial judge

allowed Taylor's PCRA petition to proceed through the courts as originally filed, and without

the amended petitions ordered from Taylor's PCRA attorneys.  (Doc. 1-2, at 2-3).  Ground

one has not been presented to the state courts.  Taylor acknowledges that he did not

pursue this claim on direct appeal "because it occurred during the PCRA process."  (Doc. 1-

2, at 3).  He further acknowledges that he did not pursue this claim in a PCRA petition.  (*Id.*).

In a conclusory fashion, Taylor cites to *Martinez* to excuse the procedural default of

this claim.  (Doc. 24, at 8).  *Martinez* recognized a narrow exception to the general rule that

attorney errors in collateral proceedings do not establish cause to excuse a procedural

default.  *Martinez*, 566 U.S. 1.  In *Martinez*, the United States Supreme Court held that in

"initial-review collateral proceedings," where collateral review provides the first opportunity

to litigate claims of ineffective assistance of appointed trial counsel, ineffective assistance of

counsel can be "cause" to excuse the procedural default.  *Martinez*, 566 U.S. at 8-11.  The

Court cautioned that its holding did not apply to counsel's error in other kinds of

proceedings, such as "appeals from initial-review collateral proceedings, second or

successive collateral proceedings, and petitions for discretionary review in a State's

appellate courts."  *Id.* at 16.  Its "equitable ruling" was designed to reflect the "importance of

the right to effective assistance of counsel." *Id.* In order to establish such "cause," petitioner must show that the state courts did not appoint counsel during the initial-review collateral proceeding for a claim of ineffective assistance at trial, or where counsel was appointed, that counsel was ineffective under the standard set forth in *Strickland*, 466 U.S. 668. *Id.* at 14. Further, a petitioner must also demonstrate that the underlying ineffectiveness claim is "substantial" and has "some merit." *Id. Martinez* does not excuse the non-cognizability of a petitioner's PCRA counsel ineffectiveness claims. *Id.* Under *Martinez*, only the procedural default of an underlying claim may be excused, and that is if the underlying claims allege ineffectiveness of trial counsel. *Id.* In ground one of Taylor's habeas petition, he does not allege that PCRA counsel failed to pursue ineffective assistance of trial counsel claims—instead, Taylor alleges that he was denied due process when the trial judge allowed his original PCRA petition to proceed, without the amended PCRA petitions from his PCRA attorneys. Therefore, *Martinez* does not apply to excuse the procedural default of this claim.

In ground five, Taylor alleges that he was denied due process when the Commonwealth submitted the printouts stated in ground four into evidence. (Doc. 1-2, at 8-10). As stated above, in ground four, Taylor alleges that trial counsel was ineffective for failing to object to the authenticity of email communications between himself and the victim. Taylor's due process claim in ground five is different than the claim raised in his PCRA petition (related to ground four). The issue raised in the PCRA proceeding was whether trial

counsel was ineffective for failing to object to the emails. This allegation does not include a standalone due process claim—as set forth in ground five.

In sum, grounds one and five in Taylor's habeas petition have not been presented to any state court. Furthermore, any attempt by Taylor to exhaust his state remedies at this time would be futile because the claim is procedurally defaulted due to waiver of the claim and expiration of the PCRA statute of limitations. *See* PA. R. APP. P. 903(a) (time for filing a direct appeal); 42 PA. CONS. STAT. ANN. § 9544(b) ("For purposes of this subchapter, an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding"); 42 PA. CONS. STAT. ANN. § 9545(b) ("Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final"). Taylor is therefore in procedural default for failing to comply with the state filing requirements. Once again, Taylor cannot excuse the default as he has not alleged cause and prejudice or a fundamental miscarriage of justice.

### 3.    Presented for First Time on PCRA Appeal (Ground Ten)

In ground ten, Taylor asserts that he was denied due process when the Commonwealth committed a *Brady* violation by withholding the victim's cell phone SIM card, and counsel was ineffective for not raising this issue. (Doc. 1-2, at 17-19). This claim is defaulted because Taylor presented the claim for the first time in his PCRA appeal, and the

17

Superior Court found the claim waived. *See Commonwealth v. Taylor*, 2021 WL 5445854,

at *7. The Superior Court concluded as follows:

> In his sixth claim, Taylor contends that his trial counsel rendered ineffective
> assistance by failing to acquire the SIM card from the victim's cell phones
> prior to trial. Brief for Appellant at 29. Taylor argues that "[i]f[,] in fact[,]
> exculpatory evidence is contained on the SIM card, it is a clear violation of
> *Brady v. Maryland*, 373 U.S. 83 (1963)." Brief for Appellant at 29. Taylor
> acknowledges that his trial counsel made several requests for "all information
> concerning the phones." *Id.* at 32. But, Taylor asserts that his trial counsel
> failed to object at trial when it became clear that "the victim [had] turned the
> SIM card over to police[.]" *Id.*
>
> Preliminarily, we observe that this claim was not raised in Taylor's PCRA
> Petition before the PCRA court. Indeed, a review of Taylor's PCRA Petition
> reveals that Taylor claimed that the Commonwealth had committed
> prosecutorial misconduct by failing to provide Taylor with the SIM card in
> question prior to trial, and the PCRA court addressed that claim. *See* PCRA
> Petition, 2/15/17, at 33-39; PCRA Court Opinion, 12/8/20, at 39-42 (wherein
> the PCRA court addressed Taylor's prosecutorial misconduct claim); *see also*
> *id.* (wherein the PCRA court concluded that Taylor had waived his
> prosecutorial misconduct claim, because Taylor had, with regards to the
> underlying *Brady* claim, failed to plead and prove that he was unaware of the
> existence of the SIM card prior to trial, and had failed to prove that the SIM
> card would have exculpatory evidence on it). Taylor raised his ineffective
> assistance of counsel claim, regarding the SIM card, for the first time in his
> Rule 1925(b) Concise Statement. *See Commonwealth v. Lauro*, 819 A.2d
> 100, 103 (Pa. Super. 2003) (citation omitted) (stating that "issues not raised in
> a PCRA [p]etition cannot be considered on appeal."); *see also*
> *Commonwealth v. Williams*, 900 A.2d 906, 909 (Pa. Super. 2006) (stating that
> "including an issue in a [Rule 1925(b)] Concise Statement does not revive
> issues that were waived in earlier proceedings"); Pa.R.A.P. 302(a) (stating
> that "[i]ssues not raised in the lower court are waived and cannot be raised for
> the first time on appeal."). Accordingly, Taylor's claim is waived.

*See Commonwealth v. Taylor*, 2021 WL 5445854, at *7.

As stated, when the state court does not address the merits of a claim because the petitioner failed to follow the state's procedural rules in presenting the claims, the claim will be considered procedurally defaulted if the rule upon which the state court relied is independent of the constitutional issue and adequate to support the decision. *Maples v. Thomas*, 565 U.S. 266, 280 (2012); *Harris v. Reed*, 489 U.S. 255, 260 (1989).  "[A] state procedural ground is not 'adequate' unless the procedural rule is 'strictly or regularly followed,'" *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988), and the rule "speaks in unmistakable terms." *Doctor v. Walters*, 96 F.3d 675, 683 (3d Cir. 1996) (*abrogated on other grounds by Beard v. Kindler*, 558 U.S. 53 (2009)).  Thus, the procedural disposition must comport with similar decisions in other cases such that there is a firmly established rule that is applied in a consistent and regular manner "in the vast majority of cases." *Banks v. Horn*, 126 F.3d 206, 211 (3d Cir. 1997) (quoting *Dugger v. Adams*, 489 U.S. 401, 410 n.6 (1989)).

Here, the default is based on the Superior Court's finding of waiver, specifically Taylor's raising the claim for the first time in his PCRA appeal.  *See Commonwealth v. Taylor*, 2021 WL 5445854, at *7.  Pennsylvania Rule of Appellate Procedure states, "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." PA. R. APP. P. 302(a).  And, the PCRA statute of limitations provides that a post-conviction petition must be filed "within one year of the date the judgment becomes final." 42 PA. CONS. STAT. § 9545(b)(1).  Both Appellate Rule 302(a) and the PCRA statute of

limitations are independent and adequate bases to support a procedural default. *See*

*Thomas v. Sec'y Pa. Dep't of Corr.*, 495 F. App'x 200, 206 (3d Cir. 2012) (finding that the

waiver ruling by the Pennsylvania Superior Court was independent and adequate,

supporting default); *Crocker v. Klem*, 450 F. App'x 136, 138 (3d Cir. 2011) (finding

petitioner's claim defaulted under Rule 302(a); *Peterson v. Brennan*, 196 F. App'x 135, 142

(3d Cir. 2006) (finding that the PCRA statute of limitations is an adequate and independent

state ground to deny habeas relief).  As a result of the state court's finding that this claim

was waived, which was based upon independent and adequate state grounds, the claim is

procedurally defaulted.  *See Werts*, 228 F.3d at 194.  Again, Taylor fails to allege, as is his

burden, the existence of either cause or prejudice for the procedural default and none

appears on the record.  Neither does it appear that a miscarriage of justice would occur.

Accordingly, habeas review of this claim is foreclosed.

    C.    <u>Exhausted Claims—Grounds Three, Four, Six, Seven, and Nine</u>

        **1.**    **Ground Three**

In ground three, Taylor alleges that he was denied effective assistance of counsel

when trial counsel failed to present evidence that Taylor is circumcised after his accuser

testified that he is uncircumcised.  (Doc. 1-2, at 4-5).  This claim was fully adjudicated during

the PCRA proceedings.  The Superior Court ultimately found that Taylor was not entitled to

relief on this claim and stated as follows:

> In his third claim, Taylor contends that his trial counsel rendered ineffective
> assistance by failing to adequately challenge the victim's statement that

20

Taylor was uncircumcised.  Brief for Appellant at 20-25.  Taylor asserts that, at trial, the victim falsely testified that Taylor was uncircumcised, despite having "sex with [Taylor] on approximately 545 occasions[.]" *Id.* at 21-22. Taylor contends that it is "simply not possible that [the victim] could be having sex with [Taylor] for a year[-]and[-]a[-]half and not know whether he was circumcised." *Id.* at 21.  Taylor argues that trial counsel failed to argue this discrepancy in his closing arguments and, thus, rendered ineffective assistance.  *Id.* at 21-22.  Additionally, Taylor asserts that if his trial counsel "[h]ad…presented more evidence establishing [that Taylor] was circumcised…the outcome very well may have been different." *Id.* at 22.

In its Opinion, the PCRA court determined that Taylor's trial counsel had a reasonable basis for not calling the jury's attention to the discrepancy regarding Taylor's alleged circumcision.  *See* PCRA Court Opinion, 12/8/20, at 21.  In particular, the PCRA court determined that Taylor's new, alternative, strategy did not offer a substantially greater chance of success.  *Id.* at 20-21. Trial counsel testified, at the PCRA hearing, that his strategy was to minimize all references made to Taylor's genitals, as he had concerns that repeated reference to Taylor's genitals in and around, a 14-year-old-girl may inflame the jury against Taylor.  *Id.*; *see also* N.T. (PCRA Hearing), 3/29/19, at 17-18. Furthermore, at the PCRA hearing, Taylor failed to present any medical testimony or proof of his circumcision.  Moreover, as the PCRA court noted in its Opinion, the victim testified at trial that Taylor was uncircumcised, and Taylor testified at trial that he is circumcised.  *See* PCRA Court Opinion, 12/8/20, at 20-22.  Thus, this evidence was already presented to the jury and the jury chose to believe the victim and not Taylor.  *Commonwealth v. Ramtahal*, 33 A.3d 602, 607 (Pa. 2011) (stating that "the jury…is free to believe all, part, or none of the evidence.").  Accordingly, we conclude that Taylor has failed to demonstrate that his trial counsel lacked a reasonable basis for his chosen course of action and, thus, this claim fails.

*Commonwealth v. Taylor*, 2021 WL 5445854, at *5.

Federal law clearly established by the Supreme Court holds that "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690-91; *see Wiggins v. Smith*, 539 U.S. 510, 522-23 (2003) (appropriate focus is on whether investigation supporting trial decision was itself

reasonable).  The record before the state court demonstrates that trial counsel made tactical decisions reasonably designed to serve his client's best interest.  As noted by the Superior Court, trial counsel testified, at the PCRA hearing, that his strategy was to minimize all references made to Taylor's genitals, and did not want to emphasize Taylor's genitals in connection with a 14-year-old girl.  *Commonwealth v. Taylor*, 2021 WL 5445854, at *5.  The Superior Court further noted that, at the PCRA hearing, Taylor failed to present any medical testimony or proof of his circumcision, and the jury heard the victim's testimony that Taylor was uncircumcised and Taylor's testimony that he is circumcised, and the jury chose to believe the victim.  *Id.*  It appears that trial counsel articulated a sound trial strategy.

Additionally, Taylor fails to demonstrate that he suffered any prejudice resulting from trial counsel's decisions.  His conviction did not turn on the victim's testimony that Taylor was uncircumcised.  Thus, Taylor cannot show that trial counsel's failure to adequately challenge the victim's statement that Taylor was uncircumcised gives rise to a reasonable probability that the result of his trial would have been different.  *Strickland*, 466 U.S. at 694.

The Superior Court's opinion is neither contrary to, nor an unreasonable application of, *Strickland*.  As a result, Taylor is not entitled to relief on this ineffective assistance of counsel claim.

### 2.    Ground Four

In ground four, Taylor asserts that trial counsel was ineffective for failing to object to the prosecution's submission of two paper printouts purporting to be back-and-forth email

conversations between the victim and Taylor.  (Doc. 1-2, at 6-7).  The Superior Court found

that Taylor was not entitled to relief for failure to develop this claim and reasoned as follows:

> In his first claim, Taylor argues that his trial counsel rendered ineffective
> assistance by failing to object to the authenticity of the email communications
> between himself and the victim.  Brief for Appellant at 12-13.  Taylor asserts
> that, at trial, he testified that he did not recognize the emails.  *Id.*  Additionally,
> Taylor claims that the only authentication of the emails was that the victim
> had provided them to the police, who performed no examination of the
> victim's or Taylor's respective computers.  *Id.* at 13.  Taylor acknowledges
> that trial counsel objected to the emails at trial, but contends that the objection
> was generic and did not specifically challenge the authenticity of the emails.
> *Id.* at 12-14.  Taylor claims that trial counsel had no reasonable basis for
> failing to object to the authenticity of the emails.  *Id.* at 14.  Additionally, Taylor
> posits that this claim has arguable merit, because there is no proof that Taylor
> was the one writing the emails.  *Id.* at 14-15.
>
> Here, Taylor fails to develop the prejudice prong of his ineffectiveness claim.
> *See Commonwealth v. Wholaver*, 177 A.3d 136, 144 (Pa. 2018) (stating that
> "[a] PCRA petitioner must address each of the[ineffective assistance of
> counsel] prongs on appeal").  Indeed, in Taylor's appellate brief, he devotes
> almost his entire argument to whether his claim has arguable merit, save for
> the final paragraph where he baldly asserts he suffered prejudice due to this
> alleged failure, as well as several others discussed *infra*.  *See* Brief for
> Appellant at 15; *see also Commonwealth v. Paddy*, 1[5] A.3d 431, 443 (Pa.
> 2011) (providing that "boilerplate allegations and bald assertions…cannot
> satisfy a petitioner's burden to prove that counsel was ineffective.");
> *Wholaver, supra*.  Accordingly, Taylor has failed to establish his claim of
> ineffective assistance of counsel.

*Commonwealth v. Taylor*, 2021 WL 5445854, at *3-4.

The Superior Court's conclusion is not an unreasonable factual determination in light

of the evidence before the state court.  *See* 28 U.S.C. § 2254(d)(2).  Nor is the Superior

Court's prejudice analysis an unreasonable application of *Strickland*.  The Superior Court

concluded that Taylor failed to demonstrate how he was actually prejudiced by the emails in

23

question. *Commonwealth v. Taylor*, 2021 WL 5445854, at \*3-4. The Superior Court

appropriately looked to Taylor to explain how he was actually prejudiced. *Id.* The Superior

Court determined, again accurately, that Taylor could not rely on a bald assertion of

prejudice, without proving how he was prejudiced, to meet his burden. *Id.* (quoting

*Commonwealth v. Paddy*, 15 A.3d 431, 443 (Pa. 2011)); *see also Strickland*, 466 U.S. at

693. This is a reasonable application of the *Strickland* prejudice prong, especially given the

Superior Court's finding that the record confirmed that counsel did, in fact, lodge objections

to the emails at trial. *See Commonwealth v. Taylor*, 2021 WL 5445854, at \*3-4; Doc. 20-2,

at 53-55. Taylor is not entitled to relief on this ineffective assistance claim.

### 3.  Ground Six

Taylor next asserts, in ground six, that trial counsel was ineffective for failing to

subpoena his Dillsburg Fire and EMS employment records and subpoenaed the wrong

Planet Fitness employment records. (Doc. 1-2, at 10-12). Taylor presented this

ineffectiveness claim in his PCRA proceedings, and the Superior Court denied the claim as

follows:

> In his fourth claim, Taylor argues that his trial counsel rendered ineffective
> assistance by failing to subpoena Taylor's employment records from Planet
> Fitness and Dillsburg EMS. Brief for Appellant at 26. Taylor contends that he
> had a "situational alibi as to certain dates that the victim said they were
> together[,]" and the employment records would have disproven the victim's
> testimony. *Id.* at 22-23. Taylor acknowledges that his trial counsel did
> subpoena employment records from December 2011, but contends that trial
> counsel should have requested employment records dating back to
> September 2011. *Id.* Taylor additionally acknowledges that the employment
> records no longer exist. *Id.* at 26-27. Nevertheless, Taylor asserts that this

24

claim has arguable merit, because these records would have disproven the victim's statements with regard to the September Incident. *Id.*

In its Opinion, the PCRA court addressed this claim as follows:

> [Trial counsel]'s request for Planet Fitness records from December of 2011 to December of 2012 did not align with the potential dates of the incident [ ] Tucker recounted, which seems to have occurred at some point in September of 2011. [Taylor] testified[, at the PCRA hearing,] that he was working third shift during this time period and that the wrong records were subpoenaed. In answering that he had become a full-time third-shift employee, [Taylor] adopted [Attorney Robinson]'s underlying proposition that the Planet Fitness records needed for his claim no longer exist. Therefore, [Taylor] was...unable to demonstrate what the records in question would have established. Though it may be through no fault of his own, we are left with [Taylor]'s bald assertion as to what the records would have established. Moreover, [the PCRA court] agree[s] with the Commonwealth that the records would not have been inconsistent with the testimony of the other witnesses about the incident in September of 2011.

> [Wherein the PCRA court summarized Tucker's testimony and highlighted that the September Incident occurred on a weekend.]

> As the Commonwealth highlighted in [its M]emorandum [of Law], [Taylor] testified that if the September [incident] had occurred on a *weekday*[,] then he would have been at work; however, this does not speak to weekends. The Commonwealth also note[d] that [Taylor]'s PCRA [P]etition accords with his trial testimony and that it was only during the PCRA proceedings that [Taylor], responding to the Commonwealth's query covering the weekends, claimed to have worked during the relevant hours, roughly, seven days a week.... Unless the records would have established that [Taylor] worked third shift at Planet Fitness during the *weekends* of the relevant period, which would contradict his trial testimony and assertions of this PCRA [P]etition, then the Planet Fitness records were immaterial. Additionally...the victim's own testimony indicates that her liaisons with [Taylor] involved her sneaking out at *nights until such time as he*

> *began to work during the nighttime*[,] and then they began meeting during the daytime. As such, there is no merit to this claim.

PCRA Court Opinion, 12/8/20, at 10-13 (emphasis in original, citations omitted).

Additionally, the PCRA court concluded, that Taylor's claim regarding the Dillsburg Fire and EMS employment records lacked merit, as they similarly no longer exist. *Id.* at 14-18. Further, the PCRA court concluded that Taylor's PCRA testimony was not credible. *See id.* at 12; *Commonwealth v. Mason*, 130 A.3d 601, 617 (Pa. 2015) (explaining that when supported by the record "[t]he PCRA court's credibility determinations…are binding….").

Our review of the record confirms the PCRA court's findings, and its thorough analysis is sound. Accordingly, we conclude that Taylor has failed to establish that this claim has arguable merit. *See id.* at 10-18; *see also Treiber, supra.*

*Commonwealth v. Taylor*, 2021 WL 5445854, at *5-6 (footnote omitted).

Because the employment records were immaterial and did not exist, the Superior Court found that there was no "arguable merit" to Taylor's claim that trial counsel was ineffective by failing to subpoena the employment records. *Id.* After reviewing the record, the Court concludes that the state court reasonably applied *Strickland* in denying this claim. In evaluating this claim, the Superior Court considered the totality of the available evidence during the PCRA proceeding. In the Superior Court's opinion, it noted that Taylor could not prevail on this claim because: (1) the employment records no longer exist; (2) the employment records were immaterial; and (3) Taylor's PCRA testimony was not credible. *Commonwealth v. Taylor*, 2021 WL 5445854, at *5-6. The Court noted that the employment records would contradict Taylor's own testimony at trial and in his PCRA petition, that he

worked five days a week during the relevant period. *Id.* Additionally, the victim's testimony

revealed that even if the employment records were subpoenaed, they would not have

provided Taylor with an alibi. *Id.* Thus, counsel cannot be deemed ineffective for failing to

subpoena documents that no longer exist, and that would not provide an alibi even if they

did exist.

The Court finds that the state court's resolution of trial counsel's failure to subpoena

certain employment records was neither contrary to nor an unreasonable application of the

*Strickland*, nor was it based on an unreasonable determination of the facts in light of the

evidence presented in the state court proceedings. Accordingly, Taylor's ineffective

assistance of counsel claim in ground six will be denied.

### 4.    Ground Seven

Taylor's contention, in ground seven, is that trial counsel was ineffective for failing to

submit the victim's Facebook message to Taylor's mother which allegedly said, "I don't

know if the Court will listen to me when I tell them we didn't have sex." (Doc. 1-2, at 12-14).

In considering, and denying this claim, the Superior Court found as follows:

> In his second claim, Taylor contends that his trial counsel rendered ineffective
> assistance by failing to introduce a Facebook post, authored by the victim,
> which purportedly states that the victim and Taylor did not have sexual
> relations. Brief for Appellant at 15-16. Taylor argues that his mother received
> this message before the start of trial, and that it "could have been
> authenticated" by trial counsel. *Id.* at 16. Taylor argues that this message is
> "clearly exculpatory" and relevant to his case and, thus, his trial counsel had
> no reasonable basis in failing cross-examine the victim about the message.
> *Id.* at 17-18.

The PCRA court addressed this claim as follows:

The entirety of the communication reads as follows:

* * *

Laura,

As you can see my parents are making sure that [Taylor] isn't with me, I can't do anything for him accept [sic] go against my parents and *say we didn't have sex which I am prepared to do. I don't want to see him go to jail* but I can't stop them from reporting it. You have to understand though that *it was him who wouldn't stop talking to me* and it got us both in trouble, *we just needed a few more years but he didn't like when I got another boyfriend.* I did that to keep him safe from this but *he continued to contact me* and my parents got tired of. [sic] I want to help him[,] honestly I do, I don't know if the court will listen to me when I tell them we didn't have sex....I'm so sorry about this, but it isn't entirely my fault, *you can see that he isn't innocent in this*, but I don't know what else to do.

Defendant's PCRA Exhibit 1 (emphasis added). The tone and tenor of this message is dripping with allusions to a romantic relationship existing between [Taylor] and a minor child. The victim labels [Taylor as] a boyfriend by dint of her statement that [Taylor] did not like it when the victim got "another boyfriend." The victim never explicitly states that [Taylor] did not have sex with her; but, rather, she states that she will say that they did not engage in coitus. Why [Taylor] would wish [these] highly prejudicial statements...to be entered into a trial against him is unfathomable.... The inference that can be drawn from the line in which the victim states that she will say that the pair did not engage in intercourse is especially weak when juxtaposed with the assertion by the victim that [Taylor] is not innocent in the matter. There is no arguable merit.

PCRA Court Opinion, 12/8/20, at 37-38 (footnote omitted, emphasis in original).

Our review of the record confirms the PCRA court's analysis and determinations. Indeed, the PCRA court's determinations that the message

does not exonerate Taylor, but rather conveys that Taylor did have sex with
the victim, and that the victim was willing to lie about the sexual relationship,
are logically sound inferences. *See id.* Because introduction of this message
into evidence would damage, rather than aid, Taylor's case at trial, there is no
arguable merit to Taylor's ineffectiveness claim. *See Treiber, supra.*
Accordingly, we grant Taylor no relief on this claim.

*Commonwealth v. Taylor*, 2021 WL 5445854, at *4-5 (footnote omitted).

With respect to this claim, Taylor fails to satisfy either prong of *Strickland*. Regarding

the first prong, the Court finds that Taylor has not established that his trial counsel's

performance fell below an objective standard of reasonableness. As evinced by the record,

the Facebook message "is dripping with allusions to a romantic relationship existing

between [Taylor] and a minor child." *Commonwealth v. Taylor*, 2021 WL 5445854, at *4;

*see also* Doc. 20-9, at 38. The Superior Court noted that the Facebook message conveys

that Taylor did, in fact, have sex with the victim, and that the victim was willing to lie about

the sexual relationship. *Commonwealth v. Taylor*, 2021 WL 5445854, at *4-5. Although

Taylor argues that trial counsel should have introduced the Facebook message into

evidence, Taylor has not established that trial counsel's failure to do so was an error "so

serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the

Sixth Amendment." *Harrington v. Richter*, 562 U.S. 86, 104 (quoting *Strickland*, 466 U.S. at

687).

Even assuming, however, that Taylor could satisfy the first prong, the Court would

still conclude, with respect to the second prong, that Taylor has not demonstrated prejudice.

As also evinced by the record, the Superior Court specifically found that the Facebook

message "would damage, rather than aid, Taylor's case at trial." *Commonwealth v. Taylor*, 2021 WL 5445854, at *5. As a result, Taylor has not shown a reasonable probability that, had trial counsel moved to introduce the Facebook message, it might have affected the jury's decision. *See Strickland*, 466 U.S. at 694 (explaining that "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome [of the trial]").

Thus, the Court concludes that Taylor falls far short of establishing that trial counsel's "conduct [in failing to introduce the Facebook message] so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686; *see Padilla v. Kentucky*, 559 U.S. 356, 371 (2010) (making the observation that "[s]urmounting *Strickland*'s high bar is never an easy task"). Consequently, Taylor's ineffective assistance of counsel claim in ground seven will be denied.

### 5.    Ground Nine

In ground nine, Taylor contends that trial counsel was ineffective for failing to object to the prosecution's alleged misrepresentation of the Commonwealth's witness' testimony during its closing argument. (Doc. 1-2, at 16-17). Taylor presented this claim in his PCRA proceedings, and the Superior Court found the claim meritless, as follows:

> In his fifth claim, Taylor argues that his trial counsel rendered ineffective assistance by failing to object to the Assistant District Attorney's ("ADA") closing argument, in which the ADA mischaracterized trial testimony. Brief for Appellant at 29. Taylor asserts that the ADA mischaracterized a conversation between the victim and N.W. by stating that the victim told N.W. about the sexual relationships without prompting. *Id.* Taylor contends, however, that

30

N.W. initiated the conversation and elicited false allegations from the victim
that Taylor was having sex with the victim. *Id.* Taylor posits that trial
counsel's failure to object resulted in improper bolstering of the victim's
testimony. *Id.* at 29.

The PCRA court addressed this claim as follows:

> Regarding the conversation between the victim and [N.W.], the [ADA, at
> trial,] stated…"[N.W.] didn't say [']I'm having this relationship with my
> guy and we're having sex.  What about you?[' "] [Taylor] submits that
> the ADA switched the roles of the girls in the conversations.

* * *

The relevant portion of N.W.'s testimony is as follows:

> [ADA]: And what was the gist of the conversation?
>
> N.W.: Well, we both talked about how we had relationships, and I
> didn't know who she had a relationship with.  So I asked her and
> she told me about a guy from the fire hall, and I remembered him
> because I saw him at the fire hall because we would hangout [sic]
> there sometimes, because like her life was the fire hall.  And she
> told me if I remembered [ ] Taylor and I said yes, and we just went
> on from there.
>
> [ADA]: Okay.  And what was the on from there part?
>
> N.W.: Well, *she asked me* if I was doing things with my boyfriend
> and I told her I was.  And then she–and, *then I asked her* if she
> was doing anything with him and she said yes.

N.T. [(Jury Trial)], 3/6/13, at 132 (emphasis added).  It is clear from the
context that…[t]he girls had a mutual conversation about their
relationships[,] and the victim initiated the portion of the conversation in
which the girls discussed what sexual acts they were performing within
their respective relationships.  Moreover, as noted by the
Commonwealth, the [ ] ADA had a right to respond to [trial] counsel's
[closing] arguments.  In his closing, [trial] counsel had referred to the
victim's statements to N.W. as the sort of "puffing" that teenagers do

about their relationships. Thus, the ADA was merely responding with a recounting of the testimony that was not a mischaracterization. The challenged statement was proper.

PCRA Court Opinion, 12/8/20, at 33-34 (some citations omitted, footnotes omitted).

Our review of the record confirms the PCRA court's analysis, and its conclusions are sound. Accordingly, we can grant Taylor no relief on this claim. *See Treiber, supra.*

*Commonwealth v. Taylor*, 2021 WL 5445854, at *6-7.

To successfully state a claim for habeas relief based upon comments made by a prosecutor at trial, a petitioner must demonstrate that the comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)); *see also Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993) (examining a prosecutorial misconduct claim "in light of the record as a whole" in order to determine whether the conduct "'had [a] substantial and injurious effect or influence'" on the jury's verdict). A court evaluating the appropriateness of prosecutorial remarks should consider if the remarks misstated or manipulated evidence, and whether they implicated other specific rights of the accused, such as the right to counsel or the right to remain silent. *See Darden*, 477 U.S. at 182. Significantly, the concept of "fair response" allows a party to respond to statements made by opposing counsel. *United States v. Robinson*, 485 U.S. 25, 32 (1988).

The state court's disposition of this claim is not an unreasonable application of the Supreme Court precedent. The state court noted that the ADA's statement

was a fair response to trial counsel's closing argument. *Commonwealth v. Taylor,*

2021 WL 5445854, at *6-7. In his closing, trial counsel referred to the victim's

statements to her friend, and the ADA responded to those statements. *Id.* The state

court examined the propriety of the comments and found that the ADA's comments

were merely a recounting of the testimony and were not a mischaracterization—

noting that the girls had a mutual conversation about their sexual relationships, and

the victim initiated the portion of the conversation in which the girls discussed their

sexual relationships. *Id.* Thus, the Superior Court found that the ADA's comments

were within the ambit of fair comment and trial counsel was not ineffective for failing

to object to it. *See Commonwealth v. Thomas,* 539 A .2d 829, 836 (Pa. Super. Ct.

1988) (trial counsel is not ineffective for failing to object when a prosecutor's remarks

are "within the ambit of fair comment").

As noted *supra,* to establish a claim for ineffectiveness of counsel, Taylor must

show: (1) that his attorney's representation fell well below an objective standard of

reasonableness; and (2) that there exists a reasonable probability that, barring counsel's

ineffectiveness, the result of the proceeding would have been different. *See Strickland,* 466

U.S. at 688-96. Furthermore, because the Superior Court addressed this claim on the

merits, the question is whether there is any reasonable argument that counsel satisfied

*Strickland*'s deferential standard. *Premo v. Moore,* 562 U.S. 115, 121-23 (2011). Given the

"highly deferential" standard in evaluating counsel's performance, the Court finds that trial counsel's performance in the case at bar was not ineffective. *See id.* at 123

The state court's rejection of Taylor's ineffective assistance of counsel claim based upon a failure to object to statements by the prosecutor during closing argument, was not contrary to, or an unreasonable application of, clearly established federal law, nor was it a decision based on an unreasonable determination of the facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(1) and (2). Accordingly, this ineffective assistance of counsel claim will be denied.

### D.    Cumulative Error

In his traverse, Taylor asserts that when his claims are viewed as a whole, he is entitled to habeas relief. (Doc. 24, at 49-51). The Superior Court found that, "other than making bald assertions in his appellate brief, Taylor fails to demonstrate how trial counsel's alleged failings constituted cumulative prejudice." *Commonwealth v. Taylor*, 2021 WL 5445854, at *8.

The Third Circuit has held that "[i]ndividual errors that do not entitle a petitioner to relief may do so when combined, if cumulatively the prejudice resulting from them undermine the fundamental fairness of his trial and denied him his constitutional right to due process." *Fahy v. Horn*, 516 F.3d 169, 205 (3d Cir. 2008). Cumulative errors will be deemed harmful only where "they had a substantial and injurious effect or influence in determining the jury's verdict, which means that a habeas petitioner is not entitled to relief

based on cumulative errors unless he can establish actual prejudice." *Id.* (internal quotation marks omitted).  To satisfy this standard, a petitioner must show that the errors complained of "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray*, 477 U.S. at 494.  In this regard, the Third Circuit "read[s] United States Supreme Court precedent as establishing the principle that the stronger the evidence against the defendant, the more likely that improper arguments or conduct have not rendered the trial unfair." *Marshall v. Hendricks*, 307 F.3d 36, 69 (3d Cir. 2002).

The Pennsylvania Supreme Court has held that "no number of failed claims may collectively warrant relief if they fail to do so individually."  *Commonwealth v. Miller*, 987 A.2d 638, 672 (Pa. 2009) (citing *Commonwealth v. Washington*, 592 Pa. 698, 927 A.2d 586, 617 (2007); *Commonwealth v. Tedford*, 598 Pa. 639, 960 A.2d 1, 56 (2008)).  Thus, there is a disparity between Pennsylvania precedent and the federal standard regarding claims of cumulative prejudice, as federal law permits a claim of cumulative prejudice even where the individual claims fail.  *See Fahy*, 516 F.3d at 205.  Since the state court presumably did not examine this claim in light of federal law, the pre-AEDPA standards of review apply.  *Everett v. Beard*, 290 F.3d 500, 508 (3d Cir. 2002).  "Under that standard, a federal habeas court owes no deference to a state court's resolution of mixed questions of constitutional law and fact…whereas the state court's factual findings are presumed to be correct unless [ ] the

state court's findings are not fairly supported by the record." *Id.* (citations and quotations omitted).

Taylor is not entitled to relief on his claim of cumulative error. The evidence presented during trial strongly supports the finding that Taylor committed the acts as charged. (*See* Doc. 20-2; *see also Marshall*, 307 F.3d at 69 ("[T]he stronger the evidence against the defendant, the more likely that improper arguments or conduct have not rendered the trial unfair.")). The Court will deny this final claim for relief.

## V.    Certificate of Appealability

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from…the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court[.]" 28 U.S.C. § 2253(c)(1)(A). It also provides that "[a] certificate of appealability may issue…only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2).

When the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Applying that standard here, jurists of reason would not find it debatable

36

whether Taylor's claims should be denied for the reasons given herein.  Accordingly, the Court will not issue a certificate of appealability.

## VI.    Conclusion

The Court will deny the § 2254 petition for writ of habeas corpus.  (Doc. 1).  A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: July ⁄4, 2025